BENJAMIN C. JOHNSON (SBN: 218518)
benjamin.johnson@mgae.com
JOSEPH A. LOPEZ (SBN: 268511)
joseph.lopez@mgae.com
MGA ENTERTAINMENT, INC.
16380 Roscoe Blvd
Van Nuys, CA 91406
Telephone: (818) 894-2525 ext. 6788
Fax: (818) 895-0771

Attorneys for Plaintiff
MGA Entertainment, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LOUIS VUITTON MALLETIER, S.A., a French société anonyme; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-10758-JFW(RAOx)<br><br>Assigned to Hon. John F. Walter<br><br>**PLAINTIFF MGA ENTERTAINMENT, INC.'S OPPOSITION TO DEFENDANT LOUIS VUITTON MALLETIER, S.A.S.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:     May 20, 2019<br>Time:     1:30 p.m.<br>Courtroom: 7A, U.S. Courthouse<br>               350 W. First Street<br>               Los Angeles, CA 90012<br><br>Complaint filed: 12/28/18<br>Pretrial Conf.:  02/07/20<br>Trial:          02/25/20 |

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1
I. INTRODUCTION ............................................................................................. 1
II. STATEMENT OF FACTS ................................................................................ 2
III. LEGAL STANDARDS ..................................................................................... 4
IV. ARGUMENT ..................................................................................................... 7
   1. The Court May Properly Exercise Subject Matter Jurisdiction Over This Declaratory Judgment Action Because MGA Has Been Placed in Reasonable Apprehension of Commercial Risk and Chilled Speech ……………………7
   **2.** No Risk of "Inconclusive Rulings" or "*Res Judicata*" Because The U.S. Courts and French Courts Are Separate Sovereign Jurisdictions …………………10
   3. MGA Does Not Seek a Broad Advisory Opinion, But Rather a Narrow Declaration of Its Rights………………………………………………………11
V. CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**             **Page(s)**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) ............................................. 9

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ............................................... 5

*Altvater v. Freeman*, 319 U.S. 359 (1943) ................................................................ 5

*Avon Prod., Inc. v. Moroccanoil, Inc.*, No. 12 CIV. 4507 GBD, 2013 WL 795652 (S.D.N.Y. Mar. 4, 2013) ................................................................... 12

*Calzaturificio Rangoni S.p.A. v. U.S. Shoe Corp.*, 868 F. Supp. 1414 (S.D.N.Y. 1994) ................................................................................................... 11

*Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393 (9th Cir.1982) .......... 6, 8

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) ......................................................... 10

*Dr. Beck & Co. G. M. B. H. v. Gen. Elec. Co.*, 210 F. Supp. 86 (S.D.N.Y. 1962) ............................................................................................................. 13

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................... 13

*Fuji Photo Film Co, Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591 (5th Cir. 1985) .................................................................................... 11

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542 (9th Cir.1990) ............................................................................................. 6, 8, 9

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ........................................ 10

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) .................................................. 4

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425 (S.D.N.Y.), aff'd, 674 F. App'x 16 (2d Cir. 2016) ......................................... 10

*Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir. 1986) ................... 4

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ................. 5

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .................. 5, 6, 7, 10, 13

*Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151 (9th Cir. 2007) ..................................... 6

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510 (7th Cir. 2015) ................................................................................... 13

*SanDisk Corp. v. Audio MPEG, Inc.*, No. C06-02655 RMW, 2007 WL 30598, (N.D. Cal. Jan. 3, 2007) ....................................................................................... 13

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ...6, 7, 8

*Schutte Bagclosures Inc. v. Kwik Lok Corp.,* 48 F. Supp. 3d 675 (S.D.N.Y. 2014) ............................................................................................................. 6, 12, 13

*Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938 (9th Cir. 1981) ................................................................................................... 8, 9

*Wible v. Aetna Life Ins. Co., 375 F.Supp.2d 956 (C.D.Cal.2005)* ........................... 9

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F.Supp. 267 (S.D.N.Y.1992) ..... 10

**Page(s)**

**STATUTES**

15 U.S.C. § 1125(c)(3)(A) .................................................................................. 3, 10

28 U.S.C. §§ 2201(a) ............................................................................................. 12

**OTHER AUTHORITIES**

F. Woodward, The Law of Quasi Contracts § 218 (1913)……………………….5

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 13

U.S. Const. amend. 1 ……………………………………………………1, 3, 5, 8, 10

U.S. Const. art. III……………………………………………………………….5, 9

iii
MGA'S OPPOSITION TO LOUIS VUITTON'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After a series of high-profile losses on parody cases such as this one in the United States, Defendant Louis Vuitton Malletier, S.A.S. ("Louis Vuitton" or "LV") wants to avoid this Court's jurisdiction and another potential loss while, at the same time, chilling MGA's freedom of speech as protected by the First Amendment of the United States Constitution under a cloud of potential litigation.

This is not a "manufactured controversy" as Louis Vuitton dismissively argues. Indeed, one of the most prominent French companies in the world has forcibly seized products from MGA's customers and claimed that MGA's Pooey Puitton product infringes its trademarks. Now, in a thinly veiled attempt to avoid a judicial determination that Pooey Puitton is protected parody in the United States, Louis Vuitton states that it has no "present intention" of suing MGA in the United States. But, having no "present intention" to sue does not foreclose a lawsuit—as set forth below, even an affirmative proclamation that it had no intent to sue MGA in the United States would not preclude subject matter jurisdiction under the Declaratory Judgment Act.

Louis Vuitton's actions in France have created an actual and justiciable controversy in the United States. Louis Vuitton has registered U.S. trademarks that are the exact same as those at issue in the E.U., and both cases involve the same Pooey Puitton product that was created and designed as a parody in this judicial district. These actions have placed MGA, a California corporation, in the untenable position of having to choose whether to continue selling the product and risk potential increased damages, or allow Louis Vuitton's actions in France to chill MGA's freedom of expression as protected by the First Amendment of the United States Constitution.

French courts cannot, and will not, make a determination as to whether Pooey Puitton is protected speech under our Constitution. Only a judicial determination by this Court will resolve that issue.

## II.  STATEMENT OF FACTS

MGA is a California corporation headquartered in Van Nuys, California. It is the largest privately-owned toy company in the United States. MGA's products include L.O.L. Surprise! which was awarded Top Selling Toy of the Year in the U.S. for 2017 and 2018, according to N.P.D. Group, a retail tracking service; Bratz dolls, which at the height of their popularity outsold Mattel's Barbie dolls; and the Little Tikes Cozy Coupe, which was one of the first molded-plastic toy cars sold in the United States. [First Amended Complaint ("FAC"), ¶¶ 11].

Louis Vuitton is a fashion designer of luxury luggage, leather goods, handbags, and accessories, which it markets and sells worldwide. Louis Vuitton owns trademark registrations in both the European Union and the United States for the word mark Louis Vuitton (the "LV Word Mark") and for the figurative mark shown below (the "LV Marks"):



[Id., ¶¶ 18, 27-28].

One of MGA's most successful new toys is the POOPSIE SLIME SURPRISE line of products ("Poopsie Products"), launched in 2018. Poopsie Products consist primarily of ingredients that consumers can combine to create "magical unicorn poop" slime that can then be stored in a portable container. The "surprise" element

2

1  of the products is the somewhat randomized nature of the ingredients and the
2  portable container. [Id., ¶ 12].

3       Pooey Puitton, a handbag shaped toy container, is a product used in
4  association with the larger line of Poopsie Products. [Id., ¶ 13]. The use of the
5  Pooey Puitton name and Pooey Puitton product in association with a product line
6  of "magical unicorn poop" is intended to criticize or comment upon the rich and
7  famous, the Louis Vuitton name, the LV marks, and on their conspicuous
8  consumption. [Id., ¶ 56]. Therefore, the Pooey Name and Pooey Product are
9  protected fair use and parody as set forth under 15 U.S.C. § 1125(c)(3)(A). [Id., ¶
10 54].

11      Louis Vuitton began proceedings in France by publicly seizing Pooey
12 Puitton products from MGA customers. [Id., ¶¶ 18-21]. MGA learned about these
13 strong-arm tactics from one of its customers. [Id. ¶ 21]. Louis Vuitton
14 subsequently named MGA (along with several of its subsidiaries, affiliates, and
15 customers) as a defendant in a French proceeding for trademark infringement
16 based upon the LV Marks and against the Pooey Puitton product (the "French
17 Action"). [Id., ¶¶ 22-26].

18      MGA is a California corporation headquartered in Van Nuys, California.
19 The major decisions regarding the design, manufacture, and distribution of the
20 Pooey Puitton name and Pooey Puitton product are therefore made within the
21 United States and within this Court's jurisdiction. Furthermore, MGA's
22 agreements with its customers, including but not limited to those named as
23 defendants in the French Action, are set forth under, and subject to, California and
24 U.S. law. [Id., ¶ 29]. As such, Louis Vuitton's actions have substantially affected
25 MGA's ability to conduct business in the United States, and have furthermore had
26 a chilling affect on MGA's freedom of expression within the United States. MGA
27 filed this action in the United States District Court – Central District of California
28 to seek a determination of its rights under federal statues and the First Amendment

of the United States Constitution because a French court cannot make that determination, only a U.S. federal court can.

Louis Vuitton now seeks to dismiss this instant action, dismiss MGA's freedom of speech as guaranteed by the U.S. Constitution, and essentially determine the parties' respective rights to free speech in a French court only. Despite the substantial adverse effect that its actions in France are having upon MGA's commercial interests and Constitutional freedoms in the United States, Louis Vuitton prefers that this Court not rule upon them. It would prefer instead that the French Action continue to have an adverse impact on MGA's commercial interests and chill its freedom of speech in the United States, all while denying this Court an opportunity to determine MGA's rights within this country. This is precisely why the Declaratory Judgment Act exists – to allow a party the certainty of having its rights adjudicated without having to wait indefinitely for an opposing party to file (or never file) a lawsuit.

### III. LEGAL STANDARDS

Louis Vuitton is not making a factual challenge to MGA's First Amended Complaint; it is not introducing extrinsic evidence to challenge the allegations contained therein. Louis Vuiton instead makes a facial challenge to MGA's First Amended Complaint, and therefore must accept the truth of Plaintiff's allegations. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "On a motion to dismiss, however, a court may take judicial notice of facts outside the pleadings. Moreover, a court may take judicial notice of 'records and reports of administrative bodies.'" *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

The Supreme Court has required a dispute for declaratory judgment to be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of fact." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). The Supreme Court has summarized the standard for declaratory judgment as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941).

Importantly, the Supreme Court has further held that a party seeking declaratory judgment does *not* need to intentionally place itself in harm's way before finding the "case and controversy" requirements to be met. For instance, the Supreme Court has long held that it is not necessary for a plaintiff to violate a criminal statute and risk prosecution in order to seek declaratory judgment on its constitutionality. "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 129 (2007) (internal citations omitted). The Supreme Court has similarly held that an "'actual or threatened serious injury to business or employment' by a private party can be as coercive as other forms of coercion supporting restitution actions at common law; and that '[t]o imperil a man's livelihood, his business enterprises, or his solvency, [was] ordinarily quite as coercive' as, for example, 'detaining his property.'" *Id*. at 132, *citing* F. Woodward, The Law of Quasi Contracts § 218 (1913), *cited in Altvater v. Freeman*, 319 U.S. 359, 364 (1943).

Similarly, the Ninth Circuit has held that "[A]n action for a declaratory judgment that a patent [or trademark] is invalid, or that the plaintiff is not

1  infringing, [presents] a case or controversy if the plaintiff has a *real and*
2  *reasonable apprehension* that he will be subject to liability if he continues to
3  manufacture his product." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
4  896 F.2d 1542, 1555–56 (9th Cir.1990) (emphasis added). "In applying this
5  standard, we focus[ ] upon the position and perceptions of the plaintiff, declining to
6  identify specific acts or intentions of the defendant that would automatically
7  constitute a threat of litigation. The acts of the defendant [a]re instead to be
8  examined in view of their likely impact on competition and the risks imposed upon
9  the plaintiff, to determine if the threat perceived by the plaintiff were [sic] real and
10 reasonable." *Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th
11 Cir.1982). "Concrete threats are nor required, under our circuit's 'flexible
12 approach.'" *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1158 (9th Cir. 2007).
13 The Federal Circuit interpreted the Supreme Court's opinion in *MedImmune* as
14 rejecting the "reasonable apprehension" test, such that meeting that higher standard
15 is no longer necessary for establishing subject matter jurisdiction under the
16 Declaratory Judgment Act. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d
17 1372, 1380 (Fed. Cir. 2007). However, the Second Circuit Court of Appeals has
18 stated that "the threat of future litigation remains relevant in determining whether
19 an actual controversy exists." *Schutte Bagclosures Inc. v. Kwik Lok Corp.,* 48 F.
20 Supp. 3d 675, 689 (S.D.N.Y. 2014).
21     While the Declaratory Judgment Act says that a Court "may" exercise
22 subject matter jurisdiction and therefore the exercise of such jurisdiction is
23 discretionary, the Ninth Circuit has reversed District Courts on abuse of discretion
24 grounds for failing to exercise subject matter jurisdiction under the Declaratory
25 Judgment Act where an actual case or controversy had been properly established.
26 *See e.g., Rhoades, supra* 504 F.3d at 1154 (reversal where District Court refused
27 to exercise jurisdiction based on "primary jurisdiction" argument because
28 proceedings concerning the same trademarks were already pending before the

TTAB and in foreign countries including Brazil, Canada, Hong Kong, Israel, South Korea, and the European Community); *SanDisk, supra* 480 F.3d at 1383. ["[T]hough the district court is given the discretion, in declaratory judgment actions, to dismiss the case, there are boundaries to that discretion. When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal. Furthermore, the exercise of discretion must be supported by a sound basis for refusing to adjudicate an actual controversy."](citations omitted).

## IV. ARGUMENT

### 1. The Court May Properly Exercise Subject Matter Jurisdiction Over This Declaratory Judgment Action Because MGA Has Been Placed in Reasonable Apprehension of Commercial Risk and Chilled Speech

Louis Vuitton has sued MGA in France over the identical Pooey Puitton product at issue in this litigation, for alleged infringement of the identical LV Marks at issue in this litigation. [*See,* FAC ¶¶ 30, 71]. For all intents and purposes, it is the same case or controversy. Louis Vuitton does not dispute that the French Action concerns the identical LV Marks and identical Pooey Puitton product, and does not dispute that it has sued MGA in France over the same LV Marks and Pooey Puitton product. Rather, Louis Vuitton tries to disingenuously claim that this is "irrelevant" to the issue of this Court's subject matter jurisdiction over the instant action. However, the Supreme Court has held that "the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant relief." *MedImmune, Inc. supra*, 549 U.S. at 118.

The facts and circumstances of the French Action show there is a substantial controversy between MGA and Louis Vuitton with respect to the Pooey Puitton product, and it has placed MGA in reasonable apprehension that it will be sued by

1  Louis Vuitton over the same LV Marks and Pooey Puitton product in the United
2  States.  Louis Vuitton has not disavowed that it will do so, instead only saying that
3  it "has no *present intent* to sue MGA in the United States." [*See*, Joint Meet And
4  Confer Statement Regarding Defendant's Motion To Dismiss, Pursuant To The
5  Court's Standing Order And Local Rule 7-3 (Dkt. # 36)(emphasis added)].
6  However, this leaves open the possibility that Louis Vuitton *will* sue MGA in the
7  future.  It's precisely the same untenable position in which the plaintiffs in *Hal*
8  *Roach Studios, Inc.* and *Chesebrough-Pond's* were placed.

9        The Federal Circuit has gone so far as to hold that even an "unequivocal
10 statement" not to sue is insufficient to decline subject matter jurisdiction because
11 "extra-judicial patent enforcement with scare-the-customer-and-run tactics" is
12 exactly the type of behavior that the Declaratory Judgment Act was intended to
13 obviate.  *SanDisk*, *supra* 480 F.3d at 1383.  "The Declaratory Judgment Act was
14 designed to relieve potential defendants from the Damoclean threat of impending
15 litigation which a harassing adversary might brandish, while initiating suit at his
16 leisure or never." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co*.,
17 655 F.2d 938, 943 (9th Cir. 1981).

18       Without a judicial determination as to whether the Pooey Puitton product is
19 non-infringing, fair use, and/or parody, MGA must either continue selling the
20 product at the risk of exposing itself to increased damages for trademark
21 infringement, or discontinue the product due to Louis Vuitton's impending threat
22 of litigation which would impermissibly chill MGA's freedom of expression
23 guaranteed by the First Amendment of the United States Constitution.  MGA is not
24 required to make this choice under the law and is within its rights to seek a
25 declaratory judgment to avoid this very situation.  "The dilemma posed by that
26 coercion—putting the challenger to the choice between abandoning his rights or
27 risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory
28

Judgment Act to ameliorate.'" *Id.* at 129, *citing, Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967).

MGA is currently engaged in the continued sale of the Pooey Puitton product in the United States, as evidenced by its continued advertising on its own website and sales offers through stores including Amazon and Walmart.[1] Therefore, MGA's level of apprehension "need not be substantial." *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555–56 (9th Cir. 1989) (citations omitted) ["An action for a declaratory judgment that a patent is invalid, or that the plaintiff is not infringing, ... [presents] a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product…If the plaintiff is engaged in the on-going production of the allegedly patented item, the showing of apprehension need not be substantial"].

As alleged in the First Amended Complaint, "[o]ne of MGA's most successful new toy lines, launched in 2018, is the [Poopsie Products]." [FAC, ¶ 12]. MGA faces the risk of ever-increasing liability if it continues to sell the Pooey Puitton product under threat of a potential trademark infringement suit. This is a textbook reason for the existence of the Declaratory Judgment Act— MGA should not have to choose between continuing the manufacture of its product under a real and reasonable apprehension of suit, on the one hand, or sacrificing its Constitutional freedoms by abandoning manufacture of the product, on the other. "The rule that a plaintiff must destroy a large building, bet the farm, or (as here)

---

[1] *See e.g.,* MGA's Website <https://poopsie.mgae.com/#?module=shop&id=6&name=poopsie-slime-surprise-pooey-puitton%E2%84%A2>; Amazon <https://www.amazon.com/Poopsie-Pooey-Puitton-Surprise-Carrying/dp/B07BDVRW6J>, and Walmart <https://www.walmart.com/ip/Poopsie-Pooey-Puitton-Slime-Surprise/801606815>. Documents found on the Internet have been held to constitute public records subject to judicial notice. *See, e.g., Wible v. Aetna Life Ins. Co*., 375 F.Supp.2d 956, 965–66 (C.D.Cal.2005).

MGA'S OPPOSITION TO LOUIS VUITTON'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  risk treble damages and the loss of 80 percent of its business before seeking a
2  declaration of its actively contested legal rights finds no support in Article III."
3  *MedImmune, Inc., supra*, 549 U.S. at 134.

4        Grave injustice would result if Louis Vuitton's cloud of litigation coerce
5  MGA into chilling expression protected by the First Amendment.  "The chilling
6  effect upon the exercise of First Amendment rights may derive from the fact of the
7  prosecution, unaffected by the prospects of its success or failure…Even the
8  prospect of ultimate failure of such prosecutions by no means dispels their chilling
9  effect on protected expression." *Dombrowski v. Pfister*, 380 U.S. 479, 487, 494
10 (1965).

11       MGA has sufficiently alleged that its products are protected parody and/or
12 fair use under 15 U.S.C. § 1125(c)(3)(A).  [FAC, ¶¶ 54, 68, 72].  Parody and fair
13 use have long been recognized by the courts as the intersection between
14 intellectual property rights and the First Amendment, where free speech and
15 expression is protected from claims of infringement.  "First Amendment
16 protections do not apply only to those who speak clearly, whose jokes are funny,
17 and whose parodies succeed." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
18 156 F. Supp. 3d 425, 436 (S.D.N.Y.), aff'd, 674 F. App'x 16 (2d Cir. 2016),
19 *citing. Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F.Supp. 267, 280
20 (S.D.N.Y.1992).  "[T]he judgment below, which penalized the publication of the
21 parody, cannot be squared with the First Amendment." *Hustler Magazine, Inc. v.
22 Falwell*, 485 U.S. 46, 57 (1988).

23       This Court should exercise subject matter jurisdiction because MGA has
24 been placed in real and reasonable apprehension of suit from LV over MGA's
25 lawful exercise of its First Amendment rights.

26   **2. No Risk of "Inconclusive Rulings" or "*Res Judicata*" Because The U.S.**
27      **Courts and French Courts Are Separate Sovereign Jurisdictions**
28       Preliminarily, it should be noted that Louis Vuitton takes two contrary

positions in its Motion – that the French Action is separate from, and has no bearing upon, the U.S. action, but that the U.S. action could somehow result in some sort of inconsistent result with or *res judicata* effect on the French Action.

As Louis Vuitton points out, the French courts are a separate sovereign interpreting separate laws from those of the United States. Any ruling in France interpreting European Union laws will have no preclusive *res judicata* effect on this Court. *Calzaturificio Rangoni S.p.A. v. U.S. Shoe Corp.*, 868 F. Supp. 1414, 1418 (S.D.N.Y. 1994) ("The Italian court's adjudication of the AMALFI mark has no application in this action. The use of AMALFI in the United States is governed solely by the trademark laws and decisions of this country. The Italian Judgment, based on Italian law, has no effect on the evaluation of the rights to use AMALFI in the United States."). For the same reason, "[i]t is . . . well settled that 'when trade-mark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trade-mark rights of the parties are irrelevant and inadmissible.'" *Fuji Photo Film Co, Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985).

MGA's sole purpose in mentioning the French Action in the allegations of the FAC is to show its impact on MGA in the United States. MGA does not ask this Court to admit into evidence any findings or rulings of the French courts. To the contrary, MGA is only asking this Court to make a determination of its rights under U.S. law. There is no risk of "inconsistent results" because French courts have no right nor ability to rule with respect to our Constitution or federal statutes, nor would they. Only a ruling by this Court will achieve that result and protect MGA's right to freedom of expression within the United States.

### 3. **MGA Does Not Seek a Broad Advisory Opinion, But Rather a Narrow Declaration of Its Rights**

Louis Vuitton's final argument attempts to misconstrue the scope of the relief sought by MGA. Louis Vuitton attempts to portray this action as a request

11

1 for a broad declaration that its Pooey Puitton product does not infringe any
2 intellectual property of anyone anywhere (e.g. "MGA's requests are neither
3 geographically nor statutorily limited"). [Motion to Dismiss (Dkt. # 37), 14:13].
4 However, MGA makes clear in the First Amended Complaint that its requested
5 relief is limited to a declaration that the Pooey Puitton product does not infringe
6 the LV Marks in the United States because there is no likelihood of confusion, its
7 is protected fair use, and/or it is protected parody. [*See e.g.,* FAC, ¶ 1,"This action
8 involves a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201(a) and
9 2202…that both the name "Pooey Puitton," and the associated toy product with
10 which it is used, do not infringe upon or dilute any of the trademarks or other
11 intellectual property rights of defendant Louis Vuitton…is protected fair use,
12 and/or is protected parody"].
13      The cases cited by Louis Vuitton are distinguishable. For instance, in
14 *Schutte Bagclosures Inc. v. Kwik Lok Corp* the products in question (a series of
15 different types of bag clips) originated in the Netherlands, and the Southern
16 District of New York *allowed* a declaratory judgment cause of action as to the "G-
17 Series" of bag clips which had actually been shipped into the United States, but not
18 as to those products which had not yet entered U.S. commerce. 48 F. Supp. 3d 675,
19 689–90, 693 (S.D.N.Y. 2014) ("Kwik Lok appears begrudgingly to accept that
20 there is an existing case or controversy with regard to the Clipps G–Series…[a]t
21 the time this litigation was brought, the Schutte parties had made plans and had in
22 fact sent some of its Clipps G-series products to New York to be shown to
23 prospective customers. That presented a specific controversy with respect to that
24 specific product line and whether it infringed Kwik Lok's intellectual property
25 rights."). *Id.* Likewise, in *Avon Prod, Inc.*, the Plaintiff seeking declaratory
26 judgment alleged only that it was "set to launch" the potentially infringing
27 products in the United States, not that it had actually done so. *Avon Prod., Inc. v.*
28 *Moroccanoil, Inc*., No. 12 CIV. 4507 GBD, 2013 WL 795652, at *2 (S.D.N.Y.

Mar. 4, 2013).[2]

Contratry to Louis Vuitton's cited authorities, the Pooey Puitton product is already sold in the United States, and a specific controversy exists with respect to that line in accord with *Schutte*. Furthermore, MGA is a California corporation headquartered in Van Nuys, California. The major decisions regarding the design, manufacture, and distribution of the Pooey Puitton name and Pooey Puittion product are therefore made within the United States and within this Court's jurisdiction. [FAC, ¶ 29].

To the extent the scope of the relief MGA is requesting – specifically limited as to the LV Marks and Pooey Puitton product in the United States – is unclear, that is something that can be remedied by amendment, and MGA respectfully requests that it be granted such an opportunity to amend consistent with the requirement of Fed. R. Civ. P. 15(a)(2) that "[t]he court should freely give leave when justice so requires." *See generally,* *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Ordinarily . . . a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed… when a district court denies a plaintiff such an opportunity, its decision will be reviewed rigorously on appeal." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).

---

[2] By way of further distinction, *SanDisk* is an unreported case dealing with patents, not trademarks, and dismissed the case based on the "reasonable apprehension" test that was subsequently deemed non-determinative by the Supreme Court in *MedImmune*. *SanDisk Corp. v. Audio MPEG, Inc*., No. C06-02655 RMW, 2007 WL 30598, at *6 (N.D. Cal. Jan. 3, 2007). *Dr. Beck & Co.* and *Avod Prod, Inc.* are also patent cases not trademark cases, and *Dr. Beck* predates *MedImmune* by several decades. *Dr. Beck & Co. G. M. B. H. v. Gen. Elec. Co.,* 210 F. Supp. 86 (S.D.N.Y. 1962). *American Circuit Breaker* dealt with a trademark infringement action for grey market goods, not declaratory relief. *Am. Circuit Breaker Corp. v. Oregon Breakers Inc*., 406 F.3d 577, 583-585 (9th Cir. 2005).

## V. **CONCLUSION**

Louis Vuitton's actions in France have adversely affected the legal interests of MGA in the United States, forcing it to choose between risking its commercial interests or chilling its protected speech. It has further detrimentally affected the ability of MGA (a California corporation headquartered in this judicial district) to manufacture and distribute its Pooey Puitton product within the United States, and its relationship with its customers in France whose contracts are governed by California and United States law.

MGA is not asking for an impermissible advisory opinion, or a worldwide declaration of protection. MGA is requesting a narrow decision as to its rights in the United States vis-à-vis the Pooey Puitton product and LV Marks. The French Action will not resolve this issue, and thus MGA's reasonable apprehension of suit will remain unless this Court exercises its rightful jurisdiction under the Declaratory Judgment Act.

Louis Vuitton's Motion should be denied in its entirety, or MGA should be granted an opportunity to amend.

Respectfully submitted,

Dated: April 29, 2019        MGA ENTERTAINMENT, INC.


By: /s/ Benjamin C. Johnson
    BENJAMIN C. JOHNSON
    Attorneys for Plaintiff
    MGA Entertainment, Inc.