NOTE: CHANGES MADE BY THE COURT

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MGA ENTERTAINMENT, INC., a California corporation,

Plaintiff,

vs.

LOUIS VUITTON MALLETIER, S.A., a French société anonyme; and DOES 1 through 10, inclusive,

Defendants.

Case No.:  2:18-cv-10758-JFW(RAOx)

**STATEMENT OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)**

| | |
|---|---|
| 1 | **STATEMENT OF DECISION GRANTING MOTION TO DISMISS** |
| 2 | **PURSUANT TO FED. R. CIV. P. 12(B)(1)** |
| 3 | On April 19, 2019, Defendant Louis Vuitton Malletier, S.A.S. ("Louis |
| 4 | Vuitton") filed a Motion to Dismiss Plaintiff MGA Entertainment, Inc.'s ("MGA") |
| 5 | First Amended Complaint in its entirety.  On April 29, 2019, MGA filed its |
| 6 | Opposition.  On May 6, 2019, Louis Vuitton filed a Reply.  After considering the |
| 7 | moving, opposing, and reply papers, and the arguments therein, the Court rules that |
| 8 | MGA failed to establish that an actual controversy exists between the parties.  As a |
| 9 | result, the Court hereby dismisses MGA's First Amended Complaint for lack of |
| 10 | jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) without leave to amend. |

# I. BACKGROUND

On April 5, 2019, MGA filed a First Amended Complaint against Louis Vuitton seeking a declaratory judgment that MGA's toy product in no way violates Louis Vuitton's intellectual property rights.  MGA is a California corporation that develops and distributes children's toys, including the "Bratz" dolls and a "handbag shaped toy container" referred to as "Pooey Puitton."  (First Am. Compl. (Dkt. No. 35) ¶¶ 5, 10, 11, 13.)  MGA alleges that on or around December 7, 2018, Louis Vuitton filed an action in a French court alleging that the Pooey Puitton name (the "Pooey Name") and product (the "Pooey Product") infringe upon and disparage certain E.U. trademarks owned by Louis Vuitton, and seeking orders from the court permitting the seizure of Pooey Products from E.U. businesses that had purchased them.  (*Id.* ¶¶ 17, 19.)  Louis Vuitton and MGA are now engaged in a lawsuit in France in which Louis Vuitton seeks relief in France for MGA's claimed violation of Louis Vuitton's E.U. trademark rights.  (*Id.* ¶¶ 22–26.)  In its action here, MGA claims that by filing an action in France alleging violation of its E.U. trademarks, Louis Vuitton has asserted claims against MGA and its customers in the United States related to U.S. trademarks, which MGA claims are "identical" to those asserted in the French proceedings.  (*Id.* ¶ 30.)

The First Amended Complaint additionally alleges that there is an actual controversy between the parties because Louis Vuitton "has a history of not respecting parody rights" and "filing vexatious lawsuits" related to its trademarks. (*Id.* ¶ 60.) MGA refers to three such cases concerning unrelated companies and products. (*Id.* ¶¶ 61–62.) On this basis, MGA concludes that an "actual, present, and justiciable controversy has arisen between Plaintiff and Defendants concerning their respective rights." (*Id.* ¶ 69.)

MGA asks the Court to declare that: (a) MGA's use of the Pooey Name and the Pooey Product does not infringe or dilute Louis Vuitton's trademarks; (b) the Pooey Name and the Pooey Product are protected as fair use under 15 U.S.C. § 1125(c)(3)(A); (c) the Pooey Name and the Pooey Product are protected as parody under 15 U.S.C. § 1125(c)(3)(A)(ii); and (d) MGA may continue to market and distribute the Pooey Product and may continue to use the Pooey Name. (*Id.* at Prayer for Relief.)

Louis Vuitton now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that MGA's First Amended Complaint fails to plead that an actual controversy exists under the laws of the United States sufficient to establish subject matter jurisdiction under the Declaratory Judgment Act ("DJA").

II.     **LEGAL STANDARD**

Article III § 2 of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies" between parties. Therefore, the plaintiff must establish that an actual case or controversy exists before a federal court can exercise subject matter jurisdiction in any case. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

The same rule applies where, as here, the plaintiff seeks a declaratory judgment. The DJA states, "[i]n a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate

pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). "[T]he phrase 'case of actual controversy' in the [DJA] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

To meet the "actual controversy" standard of the DJA, as required to invoke the Court's jurisdiction, a plaintiff must allege facts showing that there is a dispute between the parties that is: "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (internal quotation marks and citation omitted). [1]

The plaintiff bears the burden of establishing that the Court has jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To invoke federal subject matter jurisdiction, a plaintiff "must allege facts, not mere legal conclusions" sufficient to establish grounds for the Court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citation omitted). "The district court resolves a facial attack as it would a

---

[1] In addition to an actual controversy, all declaratory judgment actions must have a source of federal jurisdiction independent of the DJA. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74 (1950)). MGA alleges the Court has federal question jurisdiction under the Lanham Act. (*See* First Am. Compl. ¶ 2.)

motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121. But "the Court is not required to accept mere conclusory allegations nor does the Court necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 943 (S.D. Cal. 2007).

Finally, where a motion to dismiss is granted, the Court must decide whether to grant leave to amend. While leave to amend should generally be freely granted, *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992), a Court need not grant leave to amend in cases where "the pleadings before the court demonstrate that further amendment would be futile." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

## III. DISCUSSION

The allegations of MGA's First Amended Complaint fail to establish that an actual controversy exists under U.S. laws to establish jurisdiction under the DJA.

### A. MGA's Assertion that a Claim about E.U. Rights is a Claim about U.S. Rights is Unsupported.

MGA argues that by filing an action in France concerning E.U. trademark registrations, Louis Vuitton has asserted claims against MGA in the United States concerning Louis Vuitton's U.S. trademark registrations. (First Am. Compl. ¶ 30.) The Court disagrees.

It is a fundamental tenet of trademark law that "a trademark has a separate legal existence in each country and receives the protection afforded by the laws of that country." *Am. Circuit Breaker Corp. v. Or. Breakers Inc.*, 406 F.3d 577, 582 (9th Cir. 2005) (internal citation omitted); *see also Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1568–69 (Fed. Cir. 1990). Because of the jurisdictionally bound nature of trademarks, a foreign court's determination

whether a product infringes trademarks registered under that country's laws has no relevance to or effect on whether a product infringes U.S. trademarks. *Calzaturificio Rangoni S.p.A. v. U.S. Shoe Corp.*, 868 F. Supp. 1414, 1418 (S.D.N.Y. 1994). For the same reason, "when trade-mark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trade-mark rights of the parties are irrelevant and inadmissible." *Fuji Photo Film Co, Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985) (internal citation omitted).

Here, MGA alleges that "[a]s a result of Louis Vuitton's filing of the French Action, . . . Louis Vuitton has asserted claims against MGA and its customers in the United States based upon its identical registrations for the LV Word Mark and LV Design Mark in the United States, and with the USPTO." (First Am. Compl. ¶ 30.) By law, however, E.U. and U.S. trademark rights are separate and distinct. *Am. Circuit Breaker*, 406 F.3d at 582. What may constitute impermissible action by MGA under E.U. trademark law may be permissible in the U.S. or *vice versa*. Furthermore, any determination that the French court may make regarding Pooey Puitton and Louis Vuitton's E.U. trademark rights has no relevance to any question of U.S. law, U.S. trademark registrations, or the parties' U.S. rights. *Fuji Photo*, 754 F.2d at 599. Accordingly, an assertion of E.U. trademark rights is *not* an assertion of U.S. trademark rights. The fact that the E.U. marks and U.S. marks may appear visually similar or identical does not eliminate this distinction.

In addition, MGA fails to plead facts that Louis Vuitton has asserted its U.S. trademark rights. MGA does *not* allege that Louis Vuitton is seeking to enforce its U.S. marks in the French proceedings. The First Amended Complaint does not allege that Louis Vuitton has ever communicated with MGA about the U.S. marks, claimed infringement or dilution of the U.S. marks, threatened or filed litigation asserting the U.S. marks, or taken any concrete action at all related to the Pooey Product and the Pooey Name in the U.S. and Louis Vuitton's U.S. marks. In its

Opposition, MGA references post-complaint meet-and-confer discussions between the parties where Louis Vuitton stated it does not intend to bring suit in the United States related to the Pooey Puitton product and argues that this statement shows an actual controversy. (Opposition (Dkt. No. 42) at 8.) This argument does not follow, and in any event, consideration of such post-complaint events is improper in determining subject matter jurisdiction here. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1383–84 (Fed. Cir. 2010).

### B. The Foreign Action Does Not Show an Actual Controversy.

Numerous courts have ruled that a claim pending elsewhere of violation of foreign intellectual property rights standing alone does not support the finding of an actual controversy between the same parties related to U.S. intellectual property rights. *See, e.g.*, *Avon Prods., Inc. v. Moroccanoil, Inc.*, 2013 WL 795652, *3–4 (S.D.N.Y. Mar. 4, 2013); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 691–93 (S.D.N.Y. 2014); *San DiskCorp. v. Audio MPEG, Inc.*, No. C-06-02655 RMW, 2007 WL 30598, *3 (N.D. Cal. Jan. 3, 2007); *Studex Corp. v. Blomdahl Med. Innovation AB*, 355 F. Supp. 2d 3, 8–9 (D.D.C. 2004).

Here, MGA claims that Louis Vuitton's French lawsuit against MGA regarding E.U. trademark rights establishes an actual controversy exists concerning the Pooey Product and Pooey Name and Louis Vuitton's U.S. marks. But, as the cases cited above establish, litigation concerning foreign rights standing alone does not support the finding of an actual controversy here, and the Court will not find otherwise.

### C. MGA's Decision-Making and Contractual Agreements Do Not Evidence an Actual Controversy.

MGA's allegations that it makes decisions about the Pooey Name and Pooey Product in the United States and in the Central District of California, and that its agreements with customers are governed by California and U.S. law, do not change the fact that the only outstanding dispute between the parties is one pending in a

French court concerning E.U. trademark rights. That action has no connection to Louis Vuitton's U.S. trademarks, which are MGA's only claimed basis for the Court's subject matter jurisdiction in this case. (*See* First Am. Compl. ¶ 2.) MGA's contracts with its customers are similarly irrelevant to whether there is an actual controversy in the United States between MGA and Louis Vuitton, as those contracts have no connection to a claimed dispute between the parties here.

MGA also argues in Opposition that there may be a "chilling effect" on its actions in the United States based on Louis Vuitton's institution of an action in France. (Opposition at 10.) But this subjective concern on MGA's part does not evidence that the parties have taken "adverse positions" regarding Louis Vuitton's U.S. trademarks, or that their "conflict of interests" regarding Louis Vuitton's U.S. trademarks are "real and immediate," such that an actual controversy exists as to those trademarks. *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).

### D. MGA's Allegations about Other Cases, Companies, and Products are Irrelevant.

MGA's attempt to create a controversy between the parties by alleging that Louis Vuitton has a "history of not respecting parody rights in the United States and filing vexatious lawsuits against such protected parody," First Am. Compl. ¶ 60, is similarly unavailing. *See SanDisk*, 2007 WL 30598, at *5 (contentions that Defendant was "litigious" did not support finding actual case or controversy). Rather than looking at past behavior concerning other unrelated companies and products to determine whether there is an actual controversy here, the Court need look only to the fact that Louis Vuitton has *not* sued MGA based on its trademark rights in the U.S., while it has initiated proceedings in France. These past events do not support the finding of a case or controversy.

### E. MGA Seeks an Impermissible Advisory Opinion.

MGA's First Amended Complaint is also improper in that it seeks a broad advisory order that is not limited to the Louis Vuitton trademarks identified in the First Amended Complaint, nor to a decision regarding MGA's rights in relation to Louis Vuitton. (*See* First Am. Compl. at Prayer for Relief.) Instead, by, among other things, asking for a judgment that "MGA may continue to market and distribute its Pooey Product, and may continue to use the Pooey Name in associate with the Pooey Product" (*id.* at Prayer for Relief, ¶ D), MGA seeks a judicial endorsement of its product against legal challenges of any kind. The requested relief is an example of an advisory opinion that courts will not allow. *See Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1270 (S.D. Cal. 2007). Though MGA disclaims in its Opposition that it intended to seek such broad relief (Opposition at 11–12), the plain language of the First Amended Complaint speaks for itself.

## IV. CONCLUSION

MGA's First Amended Complaint fails to allege sufficient facts to establish that an actual controversy exists between the parties as required for jurisdiction under the Declaratory Judgment Act. Because there are no additional facts that could be alleged that would cure the defects in the First Amended Complaint, no leave to amend is granted. *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995).

Good cause appearing thereof, **IT IS HEREBY ORDERED THAT:**

1. Louis Vuitton's Motion to Dismiss MGA's First Amended Complaint is **GRANTED** without leave to amend; and

2. All claims for relief against Louis Vuitton are hereby **DISMISSED** with prejudice.

DATED: May 14, 2019

_____
JOHN F. WALTER
UNITED STATES DISTRICT JUDGE